UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.	Case No. 8:13-cr-312-T-33AEP

ANTHONY R. REEVES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This MATTER is before the Court on Defendant Anthony Reeves' Motion to Suppress Evidence (Dkt. No. 31), which was referred to the undersigned by the Honorable Virginia M. Hernandez Covington for a Report and Recommendation. By his motion, Defendant requests suppression of any tangible items of evidentiary value regarding fraud found within his backpack during a search of his vehicle for narcotics conducted by the Florida Highway Patrol ("FHP") because he avers that, although the evidence was in plain view, the incriminating nature of the evidence was not readily apparent. (Dkt. No. 31 at 5.) Because Defendant believes that the incriminating nature of the items in his backpack was not readily apparent, Defendant argues that the FHP lacked sufficient probable cause to search or inspect those items further. As a result, Defendant requests suppression of those items and of any evidence deriving from those items, such as his post-*Miranda*[1] statements. In response, the government argues that the search of the contents of Defendant's backpack was lawful because the specific collection of items in Defendant's backpack coupled with the FHP

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

trooper's knowledge and experience with fraud crimes of these types made the incriminating nature of the items readily apparent.

The parties appeared before the Court for an evidentiary hearing on December 5, 2013. Following the hearing, Defendant agreed that only one issue remained for the Court to resolve. (*See* Dkt. No. 39.) Namely, whether the incriminating nature of the items found in Defendant's backpack was readily apparent such that the FHP had probable cause to search the contents of Defendant's backpack more thoroughly for evidence of fraud. For the reasons stated herein, the undersigned finds that the FHP had probable cause to search Defendant's backpack, first for drugs and then for evidence of fraud; thus, the undersigned recommends that Defendant's motion be denied.

## I. Findings of Fact

On May 8, 2012, at approximately 7:30 p.m., Defendant was stopped by FHP Trooper Michael Scott for committing various traffic infractions. During the stop, Trooper Scott deployed his canine partner, Mino. On her second pass of the vehicle's front, driver's-side door seam, Mino alerted to the presence of narcotics, and Trooper Scott commenced a search of Defendant's vehicle. While searching the vehicle, Trooper Scott found marijuana residue and burnt marijuana seeds in the passenger compartment of the car, but he also found a black backpack in the trunk of Defendant's vehicle. Because Trooper Scott believed the backpack might contain narcotics, he searched it. In the backpack, Trooper Scott found a laptop computer, a notebook, a plastic bag containing approximately thirty credit cards, and medical records. (*See* Hearing Exs. 2, 5.) The notebook contained legers listing various names and their corresponding social security numbers and dates of birth. (*See* Hearing Exs. 3, 4.) Based on this evidence, Trooper Scott Mirandized Defendant and informed Defendant that he

suspected Defendant was involved in some type of fraud. During this initial interview, Trooper Scott asked Defendant whether he was responsible for the backpack, and Defendant responded in the affirmative.[2] Trooper Scott then conducted a more thorough search of the backpack, looking through the pages of the notebook and the compartments of the laptop computer for both narcotics and evidence of fraud.[3]

At the evidentiary hearing, Trooper Scott testified that he was familiar with a type of fraud called TurboTax fraud and that he was familiar with the instruments required to commit this type of fraud. Specifically, Trooper Scott described what he called a "starter kit" or a "bundle," which includes a list of names, social security numbers, and dates of birth, a computer, and a means by which to acquire the tax refund, such as credit cards. Although Trooper Scott initially began his search of the backpack for narcotics, once he found the collection of items described above in Defendant's backpack, Trooper Scott became suspicious that Defendant was also involved in some type of fraud or identity theft; thus, upon his second, more thorough search of Defendant's backpack, Trooper Scott's investigation evolved from a search for narcotics to a search for both narcotics and evidence of fraud. However, Trooper Scott testified that, regardless of the information in the notebook and the medical records, his suspicions of fraud would have been aroused had he only discovered the laptop computer in conjunction with the copious amount of credit cards.

After reviewing the medical records found in Defendant's backpack, the FHP contacted the Department of Veteran's Affairs ("VA"), and the VA informed the officers that

---

[2]Trooper Scott testified that Defendant later disavowed ownership of the contents of the backpack.

[3]According to Trooper Scott, he was unable to rule out the presence of narcotics upon a cursory search of the backpack because, in his experience, individuals can conceal drugs in pages and in compartments of laptop computers.

it would be sending an agent to the scene. About thirty minutes later, VA Special Agent William Chirinos arrived on the scene to examine the medical records found in Defendant's backpack and determine whether the records belonged to VA patrons. Agent Chirinos then interviewed Defendant, and Defendant made various post-*Miranda* admissions. Following the second more thorough search of Defendant's vehicle and backpack, no further evidence of narcotics was found.

Although Defendant was later permitted to leave the scene, the police retained the evidence of fraud found in his backpack, and, subsequently, Defendant was charged with twenty-four counts, which include allegations of theft of government funds, aggravated identity theft, and wire fraud. Defendant now seeks suppression of the evidence found in his backpack, arguing that the incriminating nature of the items—the laptop computer, the credit cards, the notebook with the legers inside, and the medical records—was not readily apparent, and, therefore, Trooper Scott did not have probable cause to look through the contents of Defendant's backpack.

## II. Analysis

As an initial matter, Defendant does not dispute that Trooper Scott had probable cause to search his vehicle for drugs based on the alert of canine Mino. Rather, Defendant argues that the incriminating nature of the items in the backpack was not readily apparent such that Trooper Scott did not have probable cause to investigate or inspect those items further. In contrast, the government argues that Trooper Scott had authority to investigate and seize the items in Defendant's backpack because the items were in plain view and their incriminating nature was readily apparent.

Under the plain view doctrine, an officer may inspect or seize an item without a warrant where (1) the officer is lawfully in a place or in a position from which the item can be plainly viewed and has a lawful right of access to the item, and (2) the incriminating nature of the item is "immediately apparent." *Horton v. California*, 496 U.S. 128, 136-37 (1990); *Brown v. United States*, 219 Fed. Appx. 917, 919 (11th Cir. 2007). The incriminating nature of an item in plain view is readily apparent when the officers have probable cause to believe that the item is contraband or evidence of a crime. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (stating that if officers "lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if 'its incriminating character [is not] "immediately apparent,"'—the plain-view doctrine cannot justify its seizure" (quoting *Horton*, 496 U.S. at 136) (internal citation omitted)). Since Defendant concedes that Trooper Scott was lawfully in a position from which the items in Defendant's backpack could be plainly viewed and from which he could lawfully access the items, the only question that remains is whether the incriminating nature of the items in Defendant's backpack was readily apparent.

Defendant cites *Arizona v. Hicks*, 480 U.S. 321 (1987), in support of his contention that Trooper Scott could not examine or manipulate the contents of the backpack to determine whether the items constituted evidence of fraud. *Hicks* involved an officer's examination of stereo equipment to locate its serial number and determine whether it was stolen. To view the serial number, the officer had to move some components of the stereo equipment. *Id.* at 323. In determining that the officer's examination of the stereo equipment was a violation of the defendant's Fourth Amendment rights, the Supreme Court held, first, that the examination of the stereo equipment was unrelated to the exigent circumstances under which the officers

originally entered the defendant's apartment. *Id.* at 324-25. And, second, the Court held that the officer only had reasonable suspicion, rather than probable cause, to believe the stereo equipment was stolen. *Id.* at 326. Thus, the Court concluded that the officer's examination of the serial number on the stereo equipment violated the defendant's Fourth Amendment rights.

The Court finds the facts of *Hicks* inapplicable to the present case for two reasons. First and most significantly, in contrast to *Hicks*, where the officer had no reason to examine the stereo equipment beyond his reasonable suspicion that it was stolen, Trooper Scott was permitted to manipulate and examine the items in Defendant's backpack as part of his search for drugs. Despite Defendant's concession that Trooper Scott could search the backpack for drugs, Defendant argues that this permissible search should not have placed Trooper Scott in a position from which he could manipulate the items inside the backpack and read the contents of the notebook and papers—i.e., the medical records and legers. The Court finds this argument unavailing. Prior to discovery of the incriminating items in Defendant's backpack, Trooper Scott had probable cause to search for drugs based on the alert of canine Mino. Through his training and experience, Trooper Scott was aware that oftentimes individuals will conceal narcotics between pages or secrete narcotics into the pages themselves. Thus, Trooper Scott could rightfully remove the contents of the backpack and specifically search them for contraband, which would have involved an examination of the pages. As such, the writing on the pages would have been within plain view. Additionally, Trooper Scott would not have needed to read or examine the papers closely to determine their incriminatory nature,

as a cursory view of the papers was sufficient to reveal their potential incriminatory nature.[4] (*See* Hearing Exs. 3, 4, 5.)

Second, unlike *Hicks*, where the officer only had reasonable suspicion to suspect the stereo equipment was stolen, under the circumstances of this case, Trooper Scott's suspicion of fraud rose to the level of probable cause. Notably, upon opening the backpack, Trooper Scott observed a laptop computer, a plastic bag containing about thirty credit cards, a notebook, and medical records. Trooper Scott testified that the collection of these items aroused his suspicion that Defendant had committed some kind of fraud or identity theft. Trooper Scott also testified that he was familiar with a type of fraud called TurboTax fraud and stated that collectively the items Defendant possessed was commonly referred to among law enforcement as a "starter kit" or "bundle." Thus, according to Trooper Scott, even without examining the contents more closely, the grouping of items possessed by Defendant was sufficient to evince some type of fraud.[5] The Court agrees. As Trooper Scott indicated at the evidentiary hearing, the sheer amount of credit cards found in Defendant's backpack in conjunction with the laptop computer was arguably sufficient evidence to constitute probable cause to search for further evidence of fraud, but here, additional evidence existed that solidified the probable cause in the form of the medical records and legers containing names and their corresponding social security numbers and dates of birth. *See, e.g.*, *United States v.*

---

[4] At its essence, the true issue here is whether or not Trooper Scott could manipulate the contents of Defendant's backpack, i.e. open the notebook or flip through the pages of the medical records, such that he was then in a position from which he could read the words on the page. An officer does not violate an individual's Fourth Amendment rights merely by reading the words on a document that is in plain sight and clearly within the officer's perception.

[5] Upon discovering these items, Trooper Scott temporarily halted his search to inform Defendant that he believed Defendant was involved in some kind of fraud or identity theft. This behavior reinforces Trooper Scott's testimony that he immediately recognized the items in Defendant's backpack as implements commonly employed in the commission of fraud.

*Susini*, 261 Fed. Appx. 270, 274 (11th Cir. 2008) (finding that although officers originally entered a home to search for drugs, the officers could also seize counterfeit credit cards visible in plain view because the incriminating nature of these items was readily apparent); *United States v. Ahmad*, 118 Fed. Appx. 183, 186 (9th Cir. 2004) (finding that "given the sheer volume of bank statements, credit card statements, checks and credit cards—all in a large variety of names—their incriminating nature as evidence of possible identity and credit card fraud was immediately apparent" (internal quotation marks omitted)); *United States v. McDonald*, 723 F.2d 1288, 1295 (7th Cir. 1983) (noting that the incriminating nature of several documents and credit cards not issued in Defendant's name was readily apparent). Thus, the Court finds that Trooper Scott had probable cause to believe that Defendant was involved in fraud or identity theft and was permitted to investigate the suspected fraud further by inspecting more closely the items in Defendant's backpack.

Accordingly, after due consideration and for the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence (Dkt. No. 31) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, this 13th day of December, 2013.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall

bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (en banc).


Copies furnished to:
Hon. Virginia M. Hernandez Covington
Counsel of Record